HENRY HILSDORF, Respondent, *v*. THE CITY OF ST. LOUIS AND THE ST. LOUIS RAILROAD COMPANY, Appellants.

1. *Damages — Corporation liable for acts of agent, in what degree.*— Corporations, whether municipal or aggregate, are now held to the same liability as individuals; and if an agent or servant of a corporation, in the line of his employment, shall be guilty of negligence or commit a wrong, the corporation is responsible in damages.

2. *St. Louis, city of — Deposit of carcasses — Mayor.*— The city of St. Louis is not liable to the owner of property for damages caused by the deposit of dead mules on his premises, under an arrangement with the mayor. His action in such case was outside of his official duties, and could not bind the city.

3. *St. Louis, city of — Removal of carcasses — Power of city over acts of contractors.*— The city of St. Louis had no power to control the action of persons employed under article IX of ordinance 4894, for the removal of dead animals, under their contract; and having no such power, they could not be responsible for such action.

4. *St. Louis, city of — Removal of carcasses — Responsibility of owner for.*— The fact that the city of St. Louis has made a contract for the removal of dead animals does not exonerate the owner from any responsibility in regard to them, when that contract can not be or is not complied with; nor can the obligation he is under to let the contractor have the carcass if he does not himself appropriate it within twelve hours, if the contractor shall come for it, be construed to discharge all responsibility on his part.

*Appeal from St. Louis Circuit Court.*

*Reber*, city counselor, for appellant, City of St. Louis.

The city was not liable on the facts in evidence, and the court should so have instructed the jury. (Ang. & Ames on Corp., § 388, 8th ed.; Vanderbilt v. Richmond Turnpike Co., 2 N. Y. 479; 7 Cush. 385, 388; Tweed v. Panama R.R. Co., 17 N. Y. 362; Thayer v. Boston, 19 Pick. 516–17; Dozier v. German, 30 Mo. 220.)

*Glover & Shepley*, for appellant, The St. Louis Railroad Company.

*Cline, Jamison & Day*, for respondent.

I. The railroad company was liable for the acts of Settle. (Sto. on Agency, § 308; Ang. & Ames on Corp., § 311; Thayer v. Boston, 19 Pick. 516; Gass v. Coblens, 43 Mo. 377.)

II. The city is also liable. ( City of St. Louis v. Gurno, 12 Mo. 421; Mayor of N. Y. v. Bailey, 2 Denio, 433 ; City of Dayton v. Pease, 4 Ohio St. 80 ; Rhodes v. City of Cleveland, 10 Ohio, 159; Wightman v. Washington City, 1 Black, 39; Logansport v. Wright, 25 Ind. 512; Blake v. City of St. Louis, 40 Mo. 569; Browning v. City of Springfield, 11 Ill. 143 ; City of Pittsburg v. Grier, 22 Penn. 54 ; McCombs v. Akron, 15 Ohio, 474; Ross v. City of Madison, 1 Carter, Ind., 281 ; Nebraska City v. Campbell, 2 Black, 590.)

Bliss, Judge, delivered the opinion of the court.

In May, 1866, the stables of the St. Louis Railroad Company were consumed by fire, and some 140 mules, the property of the company, were destroyed, and their carcasses more or less burned. The weather was warm, and it became necessary at once to remove them.

By article IX of ordinance 4894, establishing and regulating the health department (revised ordinances 1866, pp. 451-3), it is made the duty of street inspectors to report to the clerk of the board of health every carcass they may find, and the clerk shall enter the report in a book, designating the locality, and the exclusive privilege is given to A. Feger and G. Futterknecht, for a period covering the time of this fire, to remove and appropriate said carcasses. These men bind themselves to remove all such animals from the city within six hours after notice, and it is made the duty of every owner of any dead animal who desires to convert it to his own use to do so within twelve hours after its death, or, if he does not desire to do so, to notify said clerk or some street inspector. The city pays nothing to these contractors, and the only consideration received by them is the privilege of converting the bodies to their own use, which is done at their manufactory of soap grease outside the city limits.

On the morning of the loss by the railroad company, the clerk of the board of health received from the company the proper notice; and one Settle, employed by the contractors to remove carcasses, appeared for the purpose of entering upon the performance of his duty, and met the mayor upon the ground. The

fire occurred in the south part of the city, and the contractors'
works are north of it, and seven miles from the place of the fire,
and it became at once evident that these carcasses could not be
conveyed to them. They had already become offensive, and were
rapidly becoming more so, and their transportation through the
city, even if it could be done at once, would have been a serious
nuisance. But Settle had no means of so removing them, and
informed the mayor that it would take him a week to do the
whole job. The mayor then obtained a proposition from him
to take them below the arsenal and throw them into the river for
$1.25 per head, which proposition was communicated to the
agents of the railroad company, who assented to it, and after-
wards paid Settle his bill for the work. The river was very high
at the time, and overflowed a stone quarry belonging to the plain-
tiff so as wholly to conceal it; and finding a road to the river
bank where was situated this quarry, and it being more conve-
nient of access than where he was directed to go by the mayor,
Settle threw these carcasses into the river directly over this
quarry. The current did not strike them, and they sank into
the quarry, and the plaintiff claims that, being mixed with and
covered by the sediment that filled his excavation, he could not
re-open his quarry, and thus wholly lost the use of it. He recov-
ered a judgment, which was affirmed at general term, and defend-
ants appeal.

The defendants made separate defenses, and after the evidence
was submitted, counsel for the city asked the court to instruct
the jury that, on the facts proved, the plaintiff could not recover
against it. This instruction the court refused to give, and thus
the question is raised whether, under the facts claimed to be
proved by the plaintiff, the city is liable to him for the damage
arising from the acts of Settle.

If the city is thus liable, the liability arises by virtue of its
relation to the mayor and to Settle, or to one of them. The
responsibility of an employer for the act of those in his service
depends upon the character of those acts, and especially upon
their relation to the service. It would not be right to charge him
for the torts of his servant that had no relation to his employ-

ment.   The contract of service is no guarantee of general good conduct as a citizen, but any act done in pursuance of the contract of hire will in general charge the principal as well as the agent or servant.    Corporations, whether municipal or aggregate, are now held to the same liability as individuals, and will not be permitted to screen themselves behind the plea that they are impersonal, and their acts are but the acts of individuals ; and if an agent or servant of a corporation, *in the line of his employment*, shall be guilty of negligence or commit a wrong, the corporation is responsible in damages.   (See Angell & Ames on Corporations, §§ 385–8, and the numerous cases cited in the notes.)

In the case at bar, the mayor, it appears, acted with zeal and energy to save the public from the effects of the terrible nuisance upon the premises of the railroad company.   But he can not be said to have been acting on behalf of the city, but rather as a good citizen, whose other heavy responsibilities were a spur to look after the public welfare generally.   The general duty of abating nuisances is imposed by article I of said ordinance 4894, especially by sections 6 and 7, upon the board of health and the street inspectors under its direction, and it does not appear that the mayor has anything to do with the matter.   It is not necessary to say that an emergency could or could not arise, as if the board of health should grossly neglect its duty, and the city contractors for removing carcasses, also theirs, or there was other pressing necessity, in which the mayor, as the general executive, and by virtue of the powers given him by charter, might not so act as to bind the city, although he performed the duties of other departments.   But in the present case there was no such emergency.   The matter did not come before the board of health, nor does it appear that the mayor undertook to bind the city, or that he acted officially in the premises.   But if he did he went beyond his authority as mayor, and his acts were not those of the city.   (Thayer v. Boston, 19 Pick. 511.)

The city, then, if responsible at all, became so by the acts and relation of Settle ; and the inquiry at once arises whether Settle had any such relation to it that it ought to be held responsible

7—VOL. XLV.

for his negligence or wrong-doing. He was, as we have seen, in the employment of Feger and Futterknecht, the contractors for removing carcasses, and his employers held an independent contract with the city, and were in no way under the control or direction of its officers. They were bound to remove all carcasses in a specific manner, and neither the mayor nor board of health, nor any person or body representing the city, could interfere or in any manner control their acts. The common council could by ordinance terminate their contract, but during its existence had no power over them. I can not see, then, upon what principle of reason or justice the city can be held responsible for their acts.

The rule that prescribes the responsibility of principals, whether private persons or corporations, for the acts of others, is based upon their power of control. If the master can not command the servant, the acts of the servant are clearly not his. He is not master, for the relation implied by that term is one of power, of command; and if a principal can not control his agent, he is not an agent, but holds some other or additional relation. In neither case can the maxim *respondent superior* apply to them, for there is no superior to respond. The city authorities of St. Louis had no power to control the action of Feger and Futterknecht under their contract, and, having no such power, they can not be responsible for it; and such are the best authorities.

The case of Bush v. Steinman, 1 Bos. & Pul. 404, though followed in a few other cases, is not now generally regarded as authority. It made employers responsible for the acts of job contractors, over which they had no control, and for many years the case embarrassed the courts and caused artificial distinctions to be made, in order to reconcile it to the principles of justice. But it is now generally disregarded, and its doctrine has been expressly disclaimed by several decisions in our own State. In Barry v. The City, 17 Mo. 121, the subject underwent a thorough discussion, and the leading cases were reviewed by the court. The city had let a contract to build a sewer, the contractor having sole control of the job until accepted, and it was held that the city was not responsible for the negligence of the contractor in its construction, the relation of master and servant not existing.

In Morgan v. Truman, 22 Mo. 533, defendant was a warehouse-man, and plaintiff's goods were lost by fire caused by the negligence of a person employed by defendant in boiling the tar to make a composition roof. The responsibility of defendant was fastened upon him upon the ground that his employee, who was the overseer of the work, and hired others to work under him, was engaged by the day, and subject to the constant control of the defendant. The case was distinguished from those where the work had been let by the job, where it was admitted no such responsibility would have been incurred.

The suggestion that Settle did not remove these carcasses under this contract of his employers, but by special direction of the mayor, only brings us back to the first proposition, that the mayor had no authority to give any such direction; nor does it appear that he acted officially, but, as we shall presently see, effected between Settle and the railroad company an arrangement for their removal. The liability of the railroad company for the negligence or wrongful act of Settle was found by the jury, upon the fact that he was directly employed by the company to remove the nuisance. The instructions given by the court were very favorable to this defendant, and had not the city been included in the judgment, there would have been no error in the record. The mayor testifies that before making any arrangements with Settle, he obtained his price for the removal, went to the office of the company, and the officer in charge acceded to the terms, which were at once communicated to Settle, and, after the job was done, paid the price agreed upon, including the carriage hire of the mayor. Could any employment and service be made clearer? But the president of the company testifies that the payment of this bill was a gratuity; that they paid it to please Mr. Thomas, who had been kind to them. This view argues a singular insensibility to their obligations in the premises. In consequence of the company's misfortune, a great nuisance was created upon their premises. This nuisance they were under an imperative obligation to remove. It was rapidly becoming intolerable, would soon have driven every person out of the neighborhood, and the company would have been responsible for

the damage suffered. The fact that the city has made a contract for the removal of such nuisances does not exonerate the owner from responsibility in regard to them, when that contract can not be or is not complied with ; nor can the obligation he is under to let the contractor have the carcass if he does not himself appropriate it within twelve hours, if the contractor shall come for it, be construed to discharge all responsibility on his part. The company but performed a plain duty in employing Settle to remove the carcasses. The railroad company, then, made such an arrangement for the removal of their dead stock as they were bound to do ; they honestly paid for the work, the person employed became their servant, and they were responsible for the negligent manner in which he performed the job, and for any wrong committed in the course of the business in which he was employed.

The judgment being against both the city and the railroad company, when it should have been against the railroad company alone, is reversed and the cause remanded. The other judges concur.