ATWOOD v. CHICAGO, R. I. & P. RY. CO. et al.

(Circuit Court, W. D. Missouri, W. D. February 5, 1896.)

1. NEGLIGENCE—PLEADING AND PROOF—DIRECTING VERDICT.

The administratrix of one A. brought an action, to recover damages for his death, against two railroad companies, the R. Co. and the U. Co., alleging that the R. Co. operated its trains between certain points over the railroad of the U. Co., but not alleging upon what terms or conditions the R. Co. used such railroad; that on a certain day, when trains on both roads were to leave the station at L., it was the duty of the R. Co.'s train, which followed the U. Co.'s train, to wait at L. 10 minutes after the departure of the latter, and it was the duty of the U. Co., by its train dispatcher at L., to hold the R. train at L. 10 minutes after the departure of the U. train; but that the R. train negligently left 5 minutes after the U. train, and the U. Co. negligently permitted it to do so, in consequence of which the R. train ran into the U. train, causing the death of A., the conductor of the latter. No negligence was alleged other than the starting of the trains from L. too near together. No definite evidence was given by the plaintiff to show what interval actually elapsed between the departures of the two trains from L., though the rules of the U. Co. required an interval of 10 minutes. The whole drift of the plaintiff's evidence tended to show that, after the R. train left L., the employés in charge of it, knowing the U. train was in front, could, by the exercise of due care, have avoided the accident. Held, that plaintiff could recover only by proof of the negligence alleged in the complaint; and as there was nothing to justify a finding that the U. Co. started the trains from L. too close together, or that such act, if proved, was the proximate cause of the injury, the jury should be instructed to find for the U. Co.

2. SAME—RESPONDEAT SUPERIOR.

It was shown that the R. Co. used the U. Co.'s tracks under a contract which provided that the U. Co. should have the exclusive right to make rules for the operation of that part of the railroad used by the parties jointly, and that all trains should move in accordance with the order of the superintendent of the U. Co. Accordingly, held, that the R. Co., having no right or power to direct the movements of its trains while on

the track of the U. Co., could not be held responsible to third parties on the doctrine of respondeat superior, for any negligence of the men in charge of the train while running over such tracks, though they were in its employ and paid by it.

Action to recover from the Chicago, Rock Island & Pacific Railway Company and the receivers of the Union Pacific Railway Company damages resulting to plaintiff from the death of her husband, who was killed on the Union Pacific Railway, a few miles west of Kansas City, in a collision between two trains, on the 2d day of January, 1894, which were being operated on said railway.

The Rock Island Company owned and operated a railway from Denver to the city of Topeka, and its trains were run and operated over the Union Pacific Railway from Topeka to Kansas City, and from Kansas City to Topeka, under a contract made between the Union Pacific Company and the Rock Island Company. The contract, among other things, provided that the Union Pacific Company should make rules and regulations for the operation of its railway between the points above mentioned, which should have like application to all engines and trains which may be moved over said railway, and that the trains of both companies should move under and in accordance with the orders of the superintendent or train dispatcher of the Union Pacific Company. The Rock Island train was manned by employés hired and paid by that company. The deceased, at the time of the collision, was in charge as conductor of the Union Pacific train, and was an employé of and working for that company. The plaintiff alleged in her petition that the death of her husband was caused by the negligence and carelessness of the employés of the Rock Island Company in charge of its train.

David Overmeyer and D. W. Mulvane, for plaintiff.

John W. Beebe and N. H. Loomas, for defendant Union Pac. Ry. Co.

W. F. Evans, Frank P. Sebree, and J. E. Dolman, for defendant Chicago, R. I. & P. Ry. Co.

PHILIPS, District Judge (orally). At the conclusion of the plaintiff's evidence, each defendant has interposed, in the nature of a demurrer to the evidence, an instruction directing the jury to find for the defendants notwithstanding the evidence. It is evident that the petition in this case was framed on the theory of the right of a joint action against the defendant corporations growing out of concurring acts of negligence contributing to the injury in question. It alleges that the defendant the Rock Island Railway Company "operated its trains between the city of Topeka, Kansas, and Kansas City, Missouri, over the railroad of the said Union Pacific Railroad Company, hereinafter described." There is no averment as to the relation existing between these two companies,—no allegation as to the terms or conditions upon which the Rock Island Company operated its trains over the track of the Union Pacific Railroad Company. It appears from the petition that the railroad track was and is the property of the Union Pacific Company. Whether by lease or other contract the Rock Island Company ran its trains on this railroad does not appear. The averment of the petition would hold good even if the Rock Island Company were a mere intruder or trespasser upon this road.

When it comes to the specific allegations by which it was sought

to fix the liability of the Union Pacific Railroad Company for this injury, it is alleged as follows:

"Plaintiff further alleges that said Union Pacific train No. 1-12 left Lawrence about 4:30 o'clock on the morning of the 2d day of January, 1894; that, under the rules governing the operation of all the trains upon the railroad in question, it was the duty of the Chicago, Rock Island and Pacific train to remain at Lawrence ten minutes after the departure of the said Union Pacific train; that it was the duty of the receivers of the Union Pacific Railway Company, through its train dispatchers and telegraph operators, to hold said Rock Island train at Lawrence for ten minutes after the departure of the Union Pacific train, but, wholly disregarding its duty in that respect, the Chicago, Rock Island & Pacific train negligently and carelessly left Lawrence, and followed said Union Pacific train, within five minutes after the departure of said Union Pacific train; that, wholly disregarding their duties in that respect, said receivers of the Union Pacific Company negligently and carelessly permitted said Rock Island train to leave Lawrence within five minutes after the departure of said Union Pacific train No. 1-12."

There is no other negligent act or omission of duty contributing to the injury alleged against the Union Pacific Railway Company.

It is a well-recognized rule of pleading and practice in this jurisdiction, following the repeated rulings of the supreme court of this state, that the proof can never be broader than the averments of the petition; that a party cannot recover upon other ground of negligence than that specifically alleged; for the reason that the defendant comes to court with his evidence to meet the issue, and none other, presented by the plaintiff's petition. It is not correct, as claimed by counsel for plaintiff, that recovery may be had upon this petition because of the assumed failure of the defendant to hold the train at some other point 10 minutes between Lawrence and the place of disaster. Under the petition, Lawrence is the initial point, and the negligence on the part of the Union Pacific Company is limited and restricted to the station at Lawrence. The neglect is alleged to have occurred there, and not elsewhere. There was no special effort on the part of the plaintiff to show by direct testimony the precise time or minute at which the Rock Island train was permitted to follow the Union Pacific train out of the Lawrence station, and there was certainly no effort on the part of the Union Pacific Railway Company to help out the plaintiff in respect of this issue, whatever other assistance she may have received from the Union Pacific Company in her effort to fix the responsibility for her husband's death on the Rock Island Company. It is true, as contended by plaintiff's counsel, that there is some evidence tending to show that the Rock Island Company, at the Lawrence station, assisted in pushing and starting the Union Pacific train out of that station; but how long it stopped after that time we do not know. It appears that there was a watering station and a switch at Bismark Grove, at which trains were accustomed to stop, which was near the corporate limits of the city of Lawrence; that the Rock Island train pulled up there as if to pass the Union Pacific train, which was not accomplished. As to what interval of time in fact elapsed between the leaving the station at Lawrence of these two trains it is im-

possible to determine from this evidence. The rules prescribed by the Union Pacific Railway Company declare exactly how these trains should leave the station; that no train should leave a station until it has permission or direction from the train dispatcher or operator at that place. Where a party undertakes to recover judgment against another, to take the property of one, and appropriate it to his use, upon the ground of an imputed negligent act, the evidence ought to be so direct and tangible as to satisfy the conscience of both court and jury that a case is made out.

And, even if it could be held that there is sufficient evidence to go to the jury to determine the time within which the train in question did leave Lawrence station, the next question which confronts the court and jury is, was there any real connection between the time of the departure of the Rock Island train from Lawrence and the accident in question? No recovery can be predicated upon an imputed negligent act unless such act contributes directly to the injury. The whole drift of the plaintiff's testimony in this respect, assisted by the employés, agents, and lawyers of the Union Pacific Railway Company, being directed to show that after passing beyond Lawrence, knowing that the Union Pacific train was in advance of the Rock Island train, and could be readily seen, so that, by the exercise of due care and caution on the part of the Rock Island engineer and servants, the accident could have been prevented, it is quite inconceivable that, under the evidence presented, there was any such connection between the time of leaving Lawrence station and the collision to warrant the conclusion that the failure of the Union Pacific Company's agents at Lawrence to restrain the Rock Island train there for 10 minutes contributed directly or even remotely to the accident. Therefore, to maintain this action, it must be held under such a petition, on general principles of law, that the Union Pacific Company is liable for damages resulting from injury to one of its own employés by reason of the negligent act of the Rock Island Company while running its train over the track of the Union Pacific Company.

Counsel for the latter company direct the attention of the court to the decisions of the court of appeals of Texas and of the supreme court of Indiana which hold, in effect, that the company in whose service the employé is, the employer himself being free from negligence contributing to the injury, is not liable for the injury resulting from the wrongful act of a third party. The argument of these courts is that the liability, as in the case of the Union Pacific Company to its own employés, must spring either from a contractual relation, or from some obligation which the law, on principles of public policy, imposes. It being the duty of the employer to furnish a reasonably safe place for his employés to work in, to furnish suitable and reasonably safe implements and instruments with which to work, and keep the machinery in reasonably safe condition, so as not to expose the employé to unnecessary danger, when it has done this it has performed its full

duty under the law to its own employé. Therefore, they say that where the master has not been guilty of any negligence himself which contributes directly to the injury, and the injury comes to the employé outside of any act of the employer, beyond the control of the immediate master, by some vis major, both reason and justice demand that the master shall not be held liable therefor. Whether or not this ruling would apply to the case at bar, to an injury occurring in the state of Kansas, where the master, under the special statute, is made liable for an injury resulting. to his servant by the negligent act of a fellow servant, I do not deem it essential to the conclusion reached to determine. My conclusion in this case is predicated of the evidence as applied to the pleadings between the plaintiff and the Union Pacific Railway Company. The demurrer to the evidence or the instruction asked by the Union Pacific Railway Company will be given.

In respect to the case against the Rock Island Company, I am free to confess that the question presented is not free from embarrassment; and I have not had the time, in the progress of this trial, and since the argument, to give it extended consideration. The plaintiff bottoms her right of recovery against the Rock Island Company upon the ground that the death of her husband, who was the conductor on the Union Pacific train, resulted from the negligence of the servants of the Rock Island Company as to the manner in which they operated the train of the latter company at the time of the injury; that they negligently and wantonly permitted the Rock Island train to run down upon the train on which the conductor Atwood was located, causing his death. The liability of this company must arise either from some contractual relation between the defendant and the injured party, or from some duty the company owed to the public. It does not spring from any contractual relation, because of the relation of master and servant between the defendant company and the conductor Atwood on the Union Pacific train. It must therefore spring from the duty which the defendant company was under at the time to the public, and which it was in position to exert. While it is true that third parties cannot be affected by any contract to which they are not parties, it is competent in this case, as a matter of defense, for the defendant company to show how it was upon this road at the time of the injury, whether it was there under such conditions and circumstances as to give this plaintiff a cause of action against it. Without stopping to recount the authorities, it will be found that the liability of railroad companies for personal injuries to third parties grows out of the fact that such companies at the time were running and operating the train which caused the injury. In other words, that it was running and operating the railroad. It is common law that where one railroad company leases its railroad to another railroad company, and the latter is operating the road, and an injury is done to a third party, both the lessor and lessee may be held responsible therefor; the lessor upon the ground that it cannot escape its obligation to

the public by devolving the operation and management of its road upon another party, and the latter upon the ground that it controlled and operated the train at the time of the injury. The former having obtained a franchise from the state authorizing it to operate a railroad, it cannot abdicate, so far as the public is concerned, and escape its responsibility, no matter what the terms of the contract between it and the lessee as to the liability of the latter over to the former for injuries and losses occasioned by the negligent acts of the lessee. It is true that the contract between the Union Pacific Company and the Rock Island Company uses the words that the Union Pacific Company "lets, leases, and demises to the party of the second part, for nine hundred and ninety-nine years," the right to run the trains of the Rock Island road over the Union Pacific tracks between Topeka, Kan., and Kansas City, Mo.; but this contract does not establish the relation of lessor and lessee between the two railroads. It was not competent for the Union Pacific Railway Company, under its charter from the government of the United States, to throw off its obligation to the public to run and operate its road by devolving that duty upon the Rock Island Company by contract.

The law in this respect is well stated by Justice Miller in Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., 118 U. S. 309, 6 Sup. Ct. 1094, as follows:

"As the just result of these cases, and on sound principle, unless specially authorized by its charter, or aided by some other legislative action, a railroad company cannot, by lease or any other contract, turn over to another company, for a long period of time, its road and all its appurtenances, the use of its franchises, and the exercise of its powers; nor can any other railroad company, without similar authority, make a contract to receive and operate such road, franchises, and property of the first corporation."

This doctrine has been applied by Judge Sanborn, of this circuit, to a contract between these two parties almost on all fours with the one under consideration. See Union Pacific Ry. Co. v. Chicago, R. I. & P. Ry. Co., 2 C. C. A. 174, 51 Fed. 309, in which it is held, in effect, that such a contract does not establish the relation of lessor and lessee between the two companies. The contract under review in that case gave the Chicago, Rock Island & Pacific Railroad Company the right to use the track in conjunction with the Union Pacific Railroad Company over the Omaha bridge, and through the city of Omaha, some few miles, to make connection with its own road. That contract used the language "that the Pacific Company hereby lets to the Rock Island Railroad Company," for the purposes mentioned, the right of occupation for 999 years, just as in the case at bar. It contains provisions almost counterparts of those in the contract in question. It provides for making each party liable to the other for injuries to third persons, and gives to the Union Pacific Railroad Company the right to make rules and regulations for the operation of the road, just as in the case at bar; and the two contracts were doubtless drawn by the same lawyers. In respect of that contract, Judge Sanborn said:

"By this contract, the Pacific Company does not surrender or transfer any part of its road or property; on the other hand, it retains their possession, and reserves to itself, by the express terms of the contract, the absolute control, through its own superintendent, of the operation of every train of every company that enters upon these tracks."

Looking at the contract in question, it is evident that it was in the mind of the distinguished lawyers who drew it between these two railroad companies that they recognized a primary liability on the part of the Union Pacific Railway Company to third persons for damages, both to stock and injuries to third parties, resulting from the running of trains of the Rock Island Company over this track; for the contract expressly provides, in effect, that, where recovery shall be had against the Union Pacific Railway Company for damages consequent upon the negligent act of the Rock Island Company, the Rock Island Company shall be answerable over to the Union Pacific Company therefor, to be settled between the parties by submission to arbitration. This was done evidently because of the recognition by the contracting parties of the well-settled rule that, where the lessor or party owning the road is mulcted in damages for injuries to persons or to property by reason of the negligent act of its lessee or the company using its track, there was no right of action in its favor over against the lessee or party having permission to run its trains over its track, in the absence of a special contract creating such liability; and it was for this reason that the parties to this contract put in the express provision just referred to. The contract also provided that the Union Pacific Company should not be bound by any judgment against the Rock Island Company, and vice versa, to which the one party or the other was not a party or had notice and the opportunity to interpose and make defense. No more importance, therefore, can attach to these provisions of the contract, than that they are a guaranty of the companies for their own protection. And the courts have repeatedly held that, in an action by a third party against the company owning the road, it is wholly immaterial what these provisions are between the two companies using the track. They do not affect the question of their respective liabilities to the public.

It is expressly stipulated in this contract that the Rock Island Company shall do no business between Topeka and Kansas City. It shall take neither freight nor passengers, nor make any contract in respect of business between these two points. The business and traffic on that part of the road belongs absolutely and exclusively to the Union Pacific Company. Nothing but the simple right is given to the Rock Island Company to send its trains over that part of the railroad of the Union Pacific Company under joint schedules. The third paragraph expressly provides that the Union Pacific Company shall have the exclusive right to make all rules and regulations for the operation of that portion of its railroad to be used by the parties jointly, which shall have like application to all engines and trains which shall be moved over said railroad. All trains shall move under and in accordance with the orders of the superintendent or train dis-

patcher of the party of the first part (the Union Pacific Company), which shall as nearly as may be practicable secure equality of rights and privileges to all trains of the same class. Therefore, between Topeka and Kansas City the Rock Island train passed under the rules and regulations made alone by the Union Pacific Company, and they moved under and in accordance with the orders of the superintendent and the train dispatcher who were servants of the Union Pacific Company. In other words, in their operation and movements between Topeka and Kansas City, the Rock Island trains were absolutely under the undivided control and jurisdiction of the officers and agents of the Union Pacific Company.

In order to subject the Rock Island corporation itself, so far as third persons are concerned, to liability for injuries resulting from the manner and mode of conducting their trains on this track, authority must be found in the doctrine of respondeat superior. A reference to the fundamental rule, as expressed in recognized authorities, will clearly present the thought that is in my mind.

Parsons on Contracts says:

"There must be some principle which limits and defines the rule of respondeat superior, and we think it may be clearly seen and fixed. It is this: The responsibility of the master grows out of, is measured by, and begins and ends with, his control of the servant."

Judge Cooley, in his work on Torts, says:

"But only as between two parties does the contract establish their relation and determine their rights. Whatever obligations the relation might impose on either as respects third parties would not depend upon the nature of the stipulation, but must spring from the relation itself. If one is injured by the servant of another, and the injury is in a manner connected with the fact of service, it would be immaterial to the injured party what the contract of service was, how long it was to continue, what compensation was to be paid for it, or what mutual covenants the parties had for their own protection. The liability of the master, if any, cannot depend upon circumstances with which the public has no concern; it must come from the fact that whenever one person has placed himself under another's direction and control, in a manner that should impose on the latter the obligation to protect third parties against any injury from the acts and omissions of his subordinate, it could not at all depend on whether the master was to pay anything, nor whether the service was permanent or temporary. His control of the action of the other is the important circumstance, and the particulars of his arrangements are immaterial."

Wood, in his work on Master and Servant, says:

"The simple test is: Who has the general control of the work? Who has the right to direct what shall be done and how to do it?"

The supreme court of this state, in Hilsdorf v. City of St. Louis, 45 Mo. 98, lays down this postulate:

"The rule that prescribes the responsibility of principals, whether private persons or corporations, for the acts of others, is based upon their power of control. If the master cannot command the servant, the acts of the servant are clearly not his. He is not master, for the relation implied by that term is one of power, of command; and, if a principal cannot control his agent, he is not an agent, but holds some other or additional relation. In neither case can the maxim respondeat superior apply to them, for there is no superior to respond."

As said by the supreme court of Vermont:

"The general principle of law is that a master is liable for the tortious acts of his servant which are done in the service of the master. This responsibility grows out of and is measured by his control of the service, and in fact it begins and ends with it." Town of Pawlet v. Rutland & W. R. Co., 28 Vt. 297.

I hesitate not to assert that if we would go to the fundamental principle, which is always the safest guide, it would be found that the matter of the liability of the master depends and turns upon the question, who, at the moment of the imputed injury, had the control and direction of the movements of the servant whose misconduct or negligence caused the injury? If the servant at the time of the injury is not subject to the direction of the master sought to be charged upon the doctrine of respondeat superior, but is subject to the order and dominion of another, over whose actions the party sought to be charged has no control, the rule has no application. The learned counsel for plaintiff, recognizing the force of this contention, very ingeniously sought in argument to distinguish between the effect of the rules and regulations of the Union Pacific Company at stations where the power and authority of the superintendent or local agents of the Union Pacific Company could be directly and personally exerted upon the trainmen in charge of the Rock Island Company, and their inability to control them between stations, thus undertaking to limit the effect of this contract and these rules and the jurisdiction of the Union Pacific Company to stations where there was an opportunity, by telegraphic wires and operators, to inform the superintendent of the Union Pacific Company of any dereliction of duty on the part of the servants of the Rock Island Company; so that, when this tangible continuity of control should be for a moment broken, the obligation to operate the trains, and the fact of the operation, ceased, —was taken from one party, and conferred upon the other, making a sort of interchangeable jurisdiction. The contract contemplates no such absurdity. It is a doctrine as old as the Bible itself, and the common law of the land follows it, that a man cannot serve two masters at the same time; he will obey the one, and betray the other. He cannot be subject to two controlling forces which may at the time be divergent. So the English courts, which are generally apt to hit the blot in the application of fundamental rules, hold that there can be no application of the doctrine of respondeat superior in its application to two distinct masters; that the servant must be subject to the jurisdiction of one master at one time. This contract would cut its own throat had it provided that when at a station where there was a telegraph office, and, perchance, was present some superintendent or train dispatcher of the Union Pacific Company, the company would be responsible for anything done by the trainmen at the station, but the moment it passed outside of the station, and before it reached another, it was under the jurisdiction of the Rock Island Company, as its master. The contract means no such thing.

As said by the supreme court of Iowa in the case of Miller v. Railroad Co., 76 Iowa, 655, 39 N. W. 188:

"But they claim that the trainmen were not under the control of Harris & Co. as to the speed at which the train was to be run over the road, and

as to the care with which the same was to be handled while in motion. There is no evidence that the defendant, by any direct act, retained any control over the train or its crew. On the contrary, it was at work in constructing a railroad. It was not run under any time card, or by the direction of any train dispatcher of the defendant. The fact that the engineer, fireman, brakemen, and conductor, who composed the train crew, were retained upon defendant's pay rolls, and received their wages from the defendant, does not tend to show that the defendant retained any control of the movements of the train."

Counsel has cited the court this morning to an Illinois case, which holds, in effect, that under a contract by which one railroad company permits another to use its track for connecting purposes, subject to the right of the owner company to make rules and regulations for the operation of all trains on the track subject to the control of its superintendent and train dispatchers, such superintendent and train dispatchers thereby become but the agents and servants of the company having the right of trackage. No authority is cited in support of this broad proposition, and it does not stand to the logic of the doctrine of respondeat superior. It would present the solecism of the master's responsibility where he was without the power at the time to control the act of the imputed servant. It certainly is not the doctrine of the court of appeals of the Sixth circuit, as laid down in the case of Byrne v. Railroad Co., 9 C. C. A. 666, 61 Fed. 605. In that case the Ft. Scott Railroad Company employed a short line through the city of Memphis, belonging to another corporation, organized as a bridge company, for the purpose of transferring defendant's trains over the Mississippi river, and through the city of Memphis, connecting with the Memphis road at the outskirts of the city. In effecting this transfer, the dummy engine of the transfer company was used, but the train was manned by employés of the Memphis Railway Company, with the exception, perhaps, of the dummy engineer. In effecting this transfer through the city, the train ran over and killed a man. It was held that action would not lie for this injury against the Memphis Railroad Company, for the reason that at the time of the injury the relation of master and servant did not exist between the Memphis Railroad corporation and the servants in charge of the train; that, for the time being, they were under the control, management, and direction of the transfer company, which alone was responsible. The court cites approvingly the language of the English courts in support of its position. Lord Justice Bowen said:

"The question is not who procured the doing of the unlawful act, but depends on the doctrine of the liability of the master for the acts of his servants done in the course of his employment. We have only to consider in whose employ the man was at the time when the act complained of was done. in this sense, that by the employer is meant the person who had a right at the moment to control the doing of the act." Donovan v. Construction Syndicate [1893] 1 Q. B. 629.

The supreme court of this state certainly maintains the same fundamental doctrine expressed in Smith v. Railroad Co., 85 Mo. 418. In that case, the defendant company, from Pacific City, had no track into the city of St. Louis. To reach the city, it had a contract with

the Pacific Railroad Company to run its train over the latter's track. This was a contract similar to the one in question, which denied to the defendant company the right to carry passengers and freight between those two points, and prohibited it from admitting to its trains a passenger. A passenger entering upon its trains, however, at St. Louis, received an injury in transit, for which action was brought against the St. Louis & San Francisco Railway Company. It was held that the company was not liable, for the reason that at the time the employés and those in charge of the railroad company were absolutely under the control and jurisdiction of the Pacific Railroad Company. The contract in that case had a provision similar to the one in question, by which the Missouri Pacific Railroad Company was indemnified against any loss or liability on account of any accident or damage received on the road through the fault or negligence of defendant or its agents or employés. Chief Justice Henry, speaking for the court, said:

"Giving it its broadest scope, it does not alter the relation of the two companies to passengers from St. Louis to any station between that and Pacific. If it be so construed that if the plaintiff in this case had sued the Missouri Pacific Company, and recovered a judgment, the defendant would be liable to the Missouri Pacific Company, it is but a contract of indemnity, which of itself cannot create a liability on the part of defendant to such a passenger. That, by the agreement, the Missouri Pacific Company was to pay no part of the wages of the trainmen who were to be furnished by defendant, does not create a liability on the part of the defendant to a passenger from St. Louis to a station between that and Pacific, any more than an agreement between the Missouri Pacific Company and an individual by which the latter should assume the payment of the trainmen on one of its trains, the company, as in this contract, reserving to itself the control of the trains and trainmen and the movements of the train, would render such individual liable for injuries received by one through the negligence of such employés."

The learned judge, further on, says:

"The trainmen, though in the permanent employment of the defendant, were, while moving the train from St. Louis to Pacific, under the exclusive control and management of the Missouri Pacific, and the engineer and firemen were in the permanent employment of the latter company. Not an order could the defendant company have given as to the running of that train between St. Louis and Pacific."

Further on, he says:

"Upon what principle the St. Louis & San Francisco Co. can be held liable in this case I cannot conceive. It certainly would be an anomaly to hold one responsible for the acts of another over whom he had no control. Such a principle obtains in no action between individuals, and no reason can be assigned why it should apply in suits against corporations."

It is sticking in the bark to undertake to whittle away the underlying principles governing these cases by saying, as lawyers and courts too frequently do, that the facts are not the same. The facts can no more make law than law can make facts. Facts cannot control principles of law, but facts are made obedient to governing principles of law in their application to the rights and obligations of parties.

I have examined with some care the rules and regulations promulgated by the Union Pacific Company under this contract. They

place the management of the trains, the whole manner of their opera-tion, the speed at which they shall run, under the management of the Union Pacific Railroad Company. They prescribe how they shall approach other trains, the distance to be observed between trains while occupying the same track going in the same direction, and the safeguards that each must throw out, and the circumspection and vigilance each shall exercise. It prescribes the whole manner, and takes charge, of the running of trains; and the party who failed to ob-serve these rules and regulations was violating the rules and regula-tions of the Union Pacific Railway Company. The defendant, the Rock Island Company, was without the power or authority under this contract to give a single direction. If, in the judgment of the Union Pacific Company, it would have been safe for a train to keep within 500 yards or even 1,000 feet of a train in advance of it, it had a right under the contract to so run its trains. If, in the judgment of its superintendent or train dispatcher, it was expedient, under the exigencies of the occasion, that one train should follow within 500 or 1,000 feet of the other, in order to make up lost time, the Rock Island Company would have been powerless to prevent it. It could give no different direction, although, in its judgment, it was exceed-ingly hazardous and unsafe to so run the train. In short, by this contract, its trains were absolutely subject to the jurisdiction, con-trol, and direction of the Union Pacific Company as to the manner and time of running over this track. Under this contract, the Union Pacific Company charged the defendant company so much for the use of its track,—a certain percentage of the cost of the road and maintenance. It gets an income out of the operation of the road by the defendant company. It could not, therefore, so far as third parties are concerned, escape its liability, it would seem, for an injury done by the trainmen on the Rock Island Company's train; at least, it so seems to me on the investigation I have been able to give this question since the argument last evening, before the adjournment of court.

The instructions asked by the defendants will therefore be given, with leave to the plaintiff, if she so desires, to take a nonsuit before the case goes to the jury.

Thereupon plaintiff submitted to a nonsuit.