GEORGE T. CONNELLY, RESPONDENT, v. CITY OF SEDALIA, APPELLANT.*

Kansas City Court of Appeals.   January 3, 1928.

*Corpus Juris-Cyc. References: Municipal Corporations, 43CJ, p. 938, n. 66; p. 942, n. 94; p. 944, n. 14; p. 945, n. 20; p. 946, n. 26; p. 960, n. 92; p. 964, n. 51; p. 965, n 55; p. 971, n. 9; p. 1267, n. 91.

*Bohling & Bohling* for respondent.

*A. L. Shortridge* for appellant.

BLAND, J.—This is a suit for the conversion of sixteen automobile tires. There was a verdict and judgment in favor of plaintiff in the sum of $188, and defendant has appealed.

The facts show that about the 1st of May, 1926, the police department of the city of Sedalia obtained information that there were some automobile tires abandoned in an old building situated upon a farm outside of the city limits of Sedalia; that thereupon the police obtained the tires and brought them to the police headquarters of said city; that the Chief of Police caused to be inserted in a newspaper of that city on May 5, 1926, a notice that the police department had possession of the tires.

The facts further show that plaintiff was engaged in the business of selling automobile tires and gasoline at retail in Sedalia; that about the 1st of May, 1926, he discovered that sixteen tires were missing from his storehouse; that he thereafter learned through the newspaper publication that the police department of Sedalia had a number of tires in its possession; that plaintiff thereupon called at the police station for the purpose of identifying, if possible, the tires; that after giving a description of his tires he was told by the Chief of Police that the tires on hand did not answer the description. Plaintiff was refused the privilege of viewing the tires.

None of the tires that were recovered by the police department would fit the car belonging to the Chief of Police so he instructed one Robinson, a sanitary officer of the city, who worked under him, to take four of the tires to Mason's filling station in Sedalia and there sell or trade them. Robinson took six of the tires to Mason's and there entered into an arrangement with the caretaker of Mason's station to sell Mason four of the tires, which were left but Robinson did not collect for them. Robinson had the other two tires mounted upon the wheels of his own car by the attendant at Mason's station.

About the 1st of July plaintiff learned of the attempt to sell to Mason some of the tires in question and also that two of the tires had been put on Robinson's car. Upon obtaining this information plaintiff immediately went again to see the Chief of Police and asked the latter why the police were selling his tires. The Chief replied, "if they are your tires, you will get them." Plaintiff then called upon his attorney who went with him to police headquarters. The Chief of Police was asked to let them identify the tires but the Chief said that they were all in the city engineer's office. Plaintiff and his attorney then went to the city engineer's office where they identified seven tires as belonging to plaintiff. They then went to Mason's place and so identified four other tires and the two tires placed upon the

car of the sanitary officer were also identified by plaintiff as his, making thirteen tires in all so identified. Plaintiff was never able to trace the other three tires. It appears that later the tires left at Mason's were taken and left in the city engineer's office at the direction of the Chief of Police.

The Chief of Police testified that after plaintiff "was still claiming them (the tires) I told Mr. Robinson to tell Mr. Manker (who was the city engineer) to take them down and keep them until we got it settled." The witness denied that he made use of the tires and testified "I turned them over to the city," meaning that he turned them over to the city engineer. Plaintiff attempted to have his tires returned to him. He took the matter up with the city counselor and saw the mayor five or six times and explained the circumstances to the latter. The mayor informed plaintiff that there was no doubt the tires belonged to him and that they would be returned to him. However, the tires were never returned and after waiting six months plaintiff, noticing that several of the tires were on a car belonging to the city and which was used by the city engineer, concluded that the tires were not going to be returned to him so he brought this suit. Robinson, the sanitary officer, testified that he used in all five of the tires on his car. Plaintiff testified that Robinson used the latter's car "for the city." Robinson testified that he used his car for private purposes and did not use it in the discharge of his "duties for the city;" that the city did not furnish him "oil and gas and other expenses in connection with" his car.

It is insisted by defendant that its instruction in the nature of a demurrer to the evidence should have been given. We think this point to be well taken. The city is not liable for any conversion of the tires of which the police department may have been guilty. The police department, acting as such in the finding and the handling of the tires, was engaged in the performance of a public duty (if it had any right whatever to officiate outside of the city limits) and was not acting for the private, corporate advantage of the city.

"The rule of law is well settled that a municipal corporation is not liable in damages for the wrongful or negligent acts of its police or other officers in the execution of powers conferred upon the corporation or officers for the public good, and not for private corporate advantage, unless made liable by statute law, expressly or by implication." [Carrington v. City of St. Louis, 89 Mo. 208, 215; Worley v. Inhabitants of the Town of Columbia, 88 Mo. 106, 109; 43 C. J. 946, 965, 938; 19 R. C. L., p. 1119.]

It was not shown that either the city engineer or the sanitary officer was such officer of the city as to have authority to bind it in any wrongful conversion, if any, by them of the tires, whether the tires were used by them upon cars engaged in the city's service or even belonging to the city.

"One who seeks to hold a municipal corporation to civil liability for the acts of an individual wrongdoer is of course bound to establish that the relation of principal and agent or master and servant existed between the corporation and the wrongdoer . . . a municipal corporation is not liable for unauthorized and unlawful acts of its officers and employees, though purporting to be done on behalf of the corporation; it must further appear that such persons were expressly authorized by the municipal government to do the acts complained of, or that they were done in pursuance of a general authority to act for the municipality, on the subject to which they related. A municipal corporation may, however, be liable for an unlawful and unauthorized act of one of its officers and agents, if done in the course of his official duty or employment, and within the general scope of his authority." [19 R. C. L. 1139; 43 C. J. 944; Rowland v. City of Gallatin, 75 Mo. 134; Thomson v. City of Boonville, 61 Mo. 282; Worley v. Inhabitants of the Town of Columbia, supra; Hilsdorf v. City of St. Louis, 45 Mo. 94; Werth v. City of Springfield, 22 Mo. App. 12; Stuebner v. City of St. Joseph, 81 Mo. App. 273; Soulard v. City of St. Louis, 36 Mo. 546, 553.]

It is not necessary for us to say as to whether or not the city would be liable in any event for a conversion of this kind upon the part of any of its officers but certainly not in this case. There is no testimony as to what were the duties of the city engineer and sanitary officer and we may assume that they had no other duties than such officers would be expected to have. We fail to see upon what theory such officers could bind the city in converting automobile tires. Plaintiff cites 43 C. J. 960, and other authorities holding that a municipality may be liable in an action for conversion when it appropriates to its use the property of any person otherwise than as authorized by law upon making compensation therefor. This may be a correct statement of the law but it is equally well settled that the city is not liable where one of its officers appropriates property even though no compensation has been made therefor when such officer is not acting within the scope of his authority. [See Rowland v. City of Gallatin, supra.] In such a case the remedy is against the officer, personally.

Some point is attempted to be made in connection with the testimony of the Chief of Police that he turned the tires over to the city, thus washing his hands of the matter, and the fact that plaintiff repeatedly took up with the mayor the proposition of having his property returned and instead of its being returned he found that the city engineer was using them on the city's car and the sanitary officer upon his car. What the Chief of Police meant when he testified that he turned the tires over to the city is clearly shown in the testimony, that is, that he turned them over to the city engineer. Why he thought the city engineer was the proper representative of the city to receive the tires, if the city had anything to do with them, is not disclosed

in the testimony. However, what these circumstances have to do with the case is not clearly set forth in the brief. If plaintiff means to argue that the city ratified the conversion by the action of the mayor, we think there is no merit in the suggestion. Without passing upon the question as to whether the mayor could ratify a conversion of this kind by the city engineer and sanitary officer, there is nothing in the record tending to show that he did anything toward such ratification. His conduct, if anything, tends to show that he thought to repudiate the action in the matter by telling plaintiff there was no doubt about the tires belonging to him and that they would be returned, failing to take any action in the matter. The conduct of the mayor does not show any intention to ratify the action of any person in taking and using the tires.

The judgment is reversed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.