MILLER v. THE MINNESOTA & NORTHWESTERN RAILWAY COMPANY.

**Railroads**: CONSTRUCTION UNDER CONTRACT: NEGLIGENT OPERATION OF CONSTRUCTION TRAIN : LIABILITY. A contractor agreed to lay defendant's track at the rate of a certain number of miles per month, defendant "to furnish all motive power and cars, and operate the construction trains." One of the contractor's employes was killed, as alleged, by the too rapid running of a construction train. *Held* that defendant was not liable, because, from the nature and terms of the contract, it did not have control of the construction trains, though the train men were retained on its pay-roll and received their wages from it.

*Appeal from Dubuque District Court.*—HON. C. F. COUCH, Judge.

FILED, SEPTEMBER 6, 1888.

ACTION to recover damages for injuries to Joseph Miller, the plaintiff's intestate, which resulted in his death. The injury was caused by a construction train upon which the deceased was riding, and which, it is alleged, was so negligently operated that it spread the rails, left the track, and partially turned over, and in consequence thereof Miller was killed. There was a trial by a jury, and a verdict and judgment for plaintiff, and defendant appeals.

*Fouke & Lyon* and *Lusk & Bunn*, for appellant.

*Henderson, Hurd, Daniels & Kiesel*, for appellee.

ROTHROCK, J.,—The train by which the deceased was killed was a track-layers' construction train. The road was unfinished at the place of the accident. The rails were not spiked to all of the ties; and as the train, which consisted of cars heavily loaded with steel rails and other construction materials, was being backed to the end of the track, the rails in the track spread, the train was derailed, and Miller, who was riding on one of the cars loaded with rails, was killed. A material question in the case is, was the defendant in any event liable in damages for the alleged negligence claimed to be the cause of the casualty? The question arises upon a contract between the defendant company and a partnership known as Harris & Co., which contract is as follows:

"ST. PAUL, MINN., July 9, 1886.

"*A. B. Stickney, Esq., President Minnesota & Northwestern Railway Company, St. Paul, Minnesota.*
DEAR SIR: The undersigned hereby propose to lay as much track as you may require on the Dubuque & Northwestern Railway, from the end of the present track near Durango, westward, commencing about the 20th of August next, and laying at the rate of not less than thirty-five (35) miles per month. Also to lay what track you may require on the line of the Minnesota &

Northwestern Railroad, between Chicago and the junction with the Illinois Central Railroad near Freeport, commencing immediately after completing the work on the Dubuque & Northwestern Railway, above specified, at the rate of not less than thirty-five (35) miles per month, to lay such track in good workman-like manner at sub-grade, and to handle all material, including loading and unloading rails and ties that are delivered during the time we are laying track, at and for the sum of two hundred and twenty-five ($225) dollars per mile, with an extra allowance of twenty ($20) dollars for each split switch and frog, and fifteen ($15) dollars for each stub switch and frog. You to furnish all motive power and cars and operate the construction trains; we to furnish all tools and machinery and labor necessary to lay said track. This price to cover all royalty for the use of machines. Payments to be made on the 15th day of each calendar month for all work done during the previous month, reserving ten per cent. (10 per cent.) until all of said work is completed.

"HARRIS & Co.,
"By GEO. F. HARRIS."
"This proposition is accepted.    M. & N. W. R. R. Co.
"By A. B. STICKNEY, President."

Under this contract the appellant furnished a construction train with a crew to operate it, and Harris & Co. proceeded with the work of track-laying. The plaintiff's intestate was an employe of Harris & Co., engaged in laying down the rails on the track. At the time of the accident by which Miller was killed, he was riding to the front, to his work, and was seated on a platform car loaded with rails. Harris & Co. were made defendants in the action, but they obtained an order for a separate trial in the district court. It is not claimed by counsel for the plaintiff that the appellant is liable by reason of any negligence in attempting to run the train over an insufficient and unsafe track. It is conceded that the manner in which the track was laid was a matter not under the control of the appellant, and

that it is not liable for any negligent acts of Harris &
Co. But it is claimed, under the above contract and
the evidence in the case, that the defendant is liable for
the negligent conduct of its engineer in running the train
over an unfinished track at a dangerous rate of speed,
without keeping a lookout ahead. This question is to
be determined mainly by a construction of the said
written contract. It will be observed that the construc-
tion train was under the absolute control of Harris &
Co. There is no dispute as to the correctness of this
proposition, so far as the general direction of the work to
be done by the train was concerned. This is necessarily
implied from the fact that the contract requires Harris
& Co. to handle all material, and to load and unload the
same as required for the work. They were bound by
the contract to lay the track at the rate of thirty-five
miles per month, and to do their work they must of
necessity have had the control of the train. They
could direct it to be placed at any desired point on the
road to load or unload, direct it when to start on a trip,
and when and where to stop, and the number of trips.
All of this seems to be conceded by counsel for appellee ;
but, they claim that the train-men were not under the
control of Harris & Co. as to the speed with which the
train was to be run over the road, and as to the care
with which the same was to be managed while in
motion. There is no evidence that the defendant, by
any direct act, retained any control over the train and
its crew. On the contrary, as it was at work in con-
structing a road, it was not running under any time
card, nor by the direction of any train-dispatcher of the
defendant. The fact that the engineer, fireman, brake-
men and conductor, who composed the train-crew, were
retained upon the defendant's pay-rolls, and received
their wages from the defendant, does not tend to show
that the defendant retained any control of the move-
ments of the train. The furnishing of the train and the
payment of the train-men was part of the considera-
tion paid by the defendant to Harris & Co. for laying
the track.

Counsel for appellee claim that, under the clause of the contract requiring the defendant to "operate the construction train," the control of the train crew as to the rate of speed at which the train should be run, and the care and vigilance to be exercised by the engineer, was not given to the contractors. This we think was giving the word "operate," as used in the contract, a much more extended significance than is authorized by the contract. It is not used in the general sense common to all the acts necessary to the use of a railroad by moving trains over it. The whole scope of the contract shows that it is used in the restricted sense that the necessary force was to be furnished to move the train over the road at such times as directed by the contractors, Harris & Co.; and to limit the control of Harris & Co., so as to allow the train-men or the defendant to determine how fast or how slow the train must be run, finds no warrant in the contract. Suppose that the train-men should have persisted in running the train so slow as to seriously impede the progress of the work, or that they should have run so fast as to endanger the safe carriage of the materials, there can be no doubt that Harris & Co. had the power to require them to move the train at a proper rate of speed. As we construe this contract, the defendant is not liable for the damages occasioned by the death of plaintiff's intestate, and the court should have so instructed the jury. The rule is well established,—indeed, it is fundamental, —that where an independent contractor is employed to construct a building, or to perform any other work, and the employer reserves no control as to the manner of performance, the employer is not liable for the contractor's negligence. *Kellogg v. Payne*, 21 Iowa, 575; *Callahan v. Burlington & M. R. Ry. Co.*, 23 Iowa, 562; *Wood v. Ind. District of Mitchell*, 44 Iowa, 27. And to the same effect, and as somewhat bearing upon the facts in this case, see *Wood v. Cobb*, 13 Allen, 58; *Kimball v. Cushman*, 103 Mass. 194, and *Hitte v. Repub. Val. Ry. Co.*, 19 Neb. 620.

The Dubuque &. Northwestern Railway Company

and the Minnesota Loan & Debenture Company were made parties defendant. The court, on their motion, directed a verdict for them. The plaintiff appeals from this order of the court. The cause must be affirmed upon this appeal. It does not appear that either of said defendants had any control over the train, nor the laying of the track. The judgment of the district court upon plaintiff's appeal will be affirmed, and upon defendant's appeal it will be

REVERSED.