<hr/>

HARDY v. SHEDDEN CO., Limited.

(Circuit Court of Appeals, Sixth Circuit.  February 2, 1897.)

No. 431.

1. MASTER AND SERVANT—DANGEROUS PREMISES OR MACHINERY—KNOWLEDGE OF SERVANT—NEGLIGENCE OF THIRD PERSONS.
   A servant has the right to rely on the master's taking due care to give him a safe place and safe instruments with which to do his work, provided, in the exercise of reasonable care on his part, he does not discover any defect himself. But where, in the course of the employment, the acts of third persons, not in the same employment, may increase the danger of the service, and these acts and their character are under the eye of the servant, and, to the servant's knowledge, are not subject to the supervision of the master, the master is not liable if injury results from the negligence of the third persons.

2. SAME.
   Plaintiff was employed by defendant as driver of a truck. The officers of a grand army post hired the truck, with driver and horses, for the purpose of erecting on it a superstructure on which a number of young girls were to ride in a Decoration Day procession. The superstructure was built and placed on the truck by the officers of the post, and was not seen by defendant. In

placing it on the truck, a railing intended for the security of the driver was removed, and plaintiff was obliged to sit with his legs hanging over the front of the truck, very near the horses. While driving in this manner, a jolt, occasioned by driving into a rut, caused the superstructure to fall forward upon plaintiff, and throw him under the horses' feet, whereby he was injured. *Held*, that defendant, plaintiff's employer, was not liable for the injury so caused.

3. SAME.

*Held*, further, that plaintiff, though the general servant of defendant, was in this service the special servant of the grand army post, and it, and not defendant, was liable as master for any negligence in the construction of the superstructure which he was to use in his work.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Jay P. Lee, for plaintiff in error.

L. C. Stanley, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SAGE, District Judge.

TAFT, Circuit Judge. This is a proceeding in error to review a judgment for the defendant entered by the circuit court of the United States for the Eastern district of Michigan in a suit for damages for personal injury. William Hardy, the plaintiff in error, and the plaintiff below, was employed by the Shedden Company, the defendant below, and the defendant in error, as a driver of one of its trucks. The business of the defendant was managed by one William Anderson. On the 28th of May, 1891, two officers of the Grand Army of the Republic post at Lansing visited Anderson, and made a contract with him by which he agreed to let them have for two days one of his trucks, upon which they proposed to build a superstructure of seats, to be occupied by young girls in a Decoration Day procession to be held on the 30th of May following, and further agreed to send two of his drivers, with four horses, to haul the truck, thus loaded, in the procession. The superstructure was erected by mechanics, members of the Grand Army of the Republic post. Anderson had nothing to do either with furnishing the material or with supervising the work, and did not see the structure until after the accident about to be related. On the morning of the 30th, Anderson directed the plaintiff and another one of his drivers to take four horses, and hitch them to the truck, and to draw the truck to and from the cemetery to which the procession was going, under the direction of the executive committee of the grand army. The plaintiff knew that Anderson had nothing to do with the building of the superstructure, and thought correctly, as he says, "that the grand army folks had taken care of that." The superstructure had been placed upon an old truck lent for the purpose by the defendant. Upon the day of the procession the superstructure was changed from the old truck to the one usually driven by Hardy, and the railing or guard which was attached to Hardy's truck as a protection, and something against which he could brace himself, was removed by the G. A. R. men in order to make room for the temporary structure of seats. It does not appear that Anderson knew that this railing had been removed. The size of the structure and the number of young

girls carried required that the two drivers, one driving one team and the other the other, should sit forward on the truck, with their legs dangling very near to the tails of the horses of the rear team. They drove out to the cemetery, taking the route directed by the executive committee. As they came in sight of the cemetery, they drove into a rut in the road of a depth of from 6 to 12 inches. The jolt thus occasioned broke down the superstructure, and precipitated it against the drivers, who were just in front of it, threw them under the horses' feet, and frightened the horses into a run. The plaintiff was very severely injured, and his leg had to be amputated. At the close of the evidence of the defendant, the court below directed a verdict for the defendant on the ground that the defendant's obligation did not extend further than to see to it that the men employed in erecting the superstructure upon the truck were capable and skillful workmen, and that, as all the evidence tended to show that they were of this character, the plaintiff had failed to make a case justifying its submission to the jury.

We are of opinion that the jury was properly instructed, but we do not concur in the reason given by the court. It is well settled that a master is under an implied obligation to the servant to furnish him a reasonably safe place in which to render the services for which he is employed. But this obligation is not absolute, and circumstances may vary it. Where a driver is employed to drive a truck, he has the right to rely on the master taking due care to give him a safe truck, and a safe seat thereon upon which to ride, provided, in the exercise of reasonable care on his part, he does not discover any defect himself. But where, in the course of the employment, the acts of third persons, not employed by the master, may increase the danger of the service, and these acts and their character are under the eye of the servant, and, to the servant's knowledge, are not under the supervision of the master, we do not think the master is liable if injury results to the servant from the negligence of the third persons. For instance, where a servant is directed to take his truck to a distant point, and from there obtain a load of merchandise to be put on by the servants of the third person, and the merchandise is loaded so carelessly that in the return journey the driver suffers an injury from the defective loading, it seems clear to us that he cannot hold his master liable therefor. This is the law, because it is reason. Where the servant has greater opportunity than the master to know and observe the probable results from the acts of the third person, of which the master, to the knowledge of the servant, has had no opportunity to judge, then it is unreasonable to hold that, with respect to such acts, the master has any obligation to the servant. Of course, there are cases where the circumstances necessarily impose on the master the duty of supervising and inspecting the work of third persons which may subject the servant to risk and danger. Thus the loading of cars on a railway line is usually inspected by a railway inspector before it is received. But where there is no such inspection, and where, in the nature of things, there cannot be, the servant cannot hold the master for the work of third persons. The defendant company,

It is conceded, had nothing whatever to do with the materials or the plan of construction of the temporary platform. The company did not supervise it, and it was not intended by the grand army people that it should. The plaintiff below admits that he had no reason to believe that the superintendent of the company had taken any part in the erection or supervision of this structure. How, then, could he rely on an implied obligation that the master would see to it that this structure was not dangerous? He knew that the members of the grand army post were engaged in erecting it, and that he must rely upon their skill and care, rather than upon that of his master. We do not think the case would be different had he been directed to take his truck to the headquarters of the grand army post, and there had taken on board his truck a large number of girls or young women having with them camp stools or chairs upon which to sit. In such a case it is conceivable that the load might be so arranged by the executive committee as to cause an accident similar to the one shown here. The injury resulting would be caused by the members of the executive committee of the grand army post, and to them alone would the injured driver have to look.

We are further of opinion that this case comes within the class of cases of which Nason's Adm'r v. Railroad Co., 22 U. S. App. 220, 9 C. C. A. 666, and 61 Fed. 605, is one. In that case a railroad company had rented to a bridge company its engine, its engineer, and its fireman, and while it was doing the business of the bridge company the plaintiff was injured through the negligence of the engineer. It was held that the railroad company, the owner of the engine, and the original employer of the engineer, could not be held liable for the injury, because, though the engineer was the general servant of the railroad company, at the time he was engaged in the business of the bridge company. A number of cases were cited to sustain this view. Donovan v. Construction Syndicate [1893] 1 Q. B. 629; Rourke v. Colliery Co., 2 C. P. Div. 205; Powell v. Construction Co., 88 Tenn. 692, 13 S. W. 691; Miller v. Railway Co., 76 Iowa, 655, 39 N. W. 188. We do not see why the principle of these cases has not application as well to suits by injured servants against the general master as to suits by third persons against him. In the light of these cases the driver, the plaintiff below, though the general servant of the defendant, the Shedden Company, was doing the business of the grand army post, and was engaged as a special servant in its employ. In so far as the grand army post superintended the construction of that which went to make up the place in which the driver was to discharge his duties, to that extent the grand army post was liable to him for the injury resulting from their negligence, and his general master, the Shedden Company, was not. It is true that it is held in Little v. Hackett, 116 U. S. 366, 372, 380, 6 Sup. Ct. 391, in Laugher v. Pointer, 5 Barn. & C. 547, and Quarman v. Burnett, 6 Mees. & W. 499, 507, that where a man lets out a carriage on hire to another he in no sense places the coachman under the control of the hirer, except that the latter may indicate the destination to which he wishes to be driven. But the present, we think, is clearly distin-

guishable from such a case, because here was not the ordinary hiring of a carriage for a trip, but it was the hiring of a truck to be built upon, so that its nature as a vehicle was changed, and then a separate hiring of the means of locomotion. This did, in our opinion, place the drivers under the control of the executive committee of the grand army post, and made that post, for the time being, the master of the driver. To it, therefore, must the driver look for indemnity for any injury suffered by him through the negligence of the post in altering and loading the truck. The judgment of the circuit court is affirmed.