STEWART v. CALIFORNIA IMP. COMPANY et al.

S. F. No. 1544; May 21, 1900.

61 Pac. 280.

**Municipality—Liability for Personal Injuries.—A City Hired from an Improvement Company** the use of a steam roller and engineer. The city had full control over the movements of the steam roller, and directed its engineer where to operate it. The company paid the salary of the engineer, and had the power to discharge him. The roller, being directed to operate where the ground was too soft to hold it up, sank in the mud, and the engineer, in a proper exercise of his duties, put on full steam, and extricated the roller from the mud. The steam then escaped with a loud noise, and frightened the horse of a traveler, who was permitted by the city's superintendent to approach without warning, injuring him. Held, that the city was liable therefor, and not the company.

APPEAL from Superior Court, Alameda County.

Action for injuries by M. G. Stewart against the California Improvement Company and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Edward J. Pringle and Wm. B. Pringle for appellants; Chickering, Thomas & Gregory and B. C. McFadden for respondent.

CHIPMAN, C.—The trial was by the court without a jury. The court found that defendant Conger was, on March 4, 1896, employed by his codefendant, the company, "as engineer to manage a steam roller then owned by said company, and used by it in rolling and leveling streets. The said steam roller was then in the use of the city of Oakland; the same, with the engineer in charge, having been hired by the city of Oakland from the defendant," the company. The

company "had selected the said engineer, his services were
paid for by said company, and said company had the right
to remove him. The relation of master and servant existed
between the defendant California Improvement Company and
the defendant Conger, and not between the city of Oakland
and the defendant Conger." Appellant contends that, if
there is any liability for the accident, it is from the city of
Oakland, and not from the company. As this question lies
at the threshold of the case, it should first be determined.
The evidence on the subject was as follows: The witness Miller, superintendent of streets for the city of Oakland, testified: "The roller was in the employ of the city of Oakland
the day of this accident. It was hired from the California
Improvement Company. Mr. Sherman, my foreman, had
charge of the work, together with myself." On cross-examination the following question and answer occurred: "Q. Did
Mr. Sherman assume to have such control over the roller as
to affect the engine—affect the movements of the engine?"
Defendant objected as irrelevant, immaterial and incompetent, and called for the conclusion of the witness. The
objection was overruled, and the witness answered: "I think
not." The witness, continuing, said: "Nothing was said in
the lease of the engine to the city about discharging the engineer. I secured the engine under the authority of the board
of public works. We had to have a roller, and this was the
most available one. . . . . We said nothing about anybody to
run it, or about pay. The understanding was that the machine, with the fuel and engineer, should be supplied at so
much per day. Q. As a matter of fact, this roller, while
operating upon that street, was entirely under the direction
of yourself or foreman, was it not? A. Yes, sir. We controlled to the extent of notifying what portion of the street
we wanted rolled. I exercised the judgment as to when the
road was rolled enough and when it was not. I did not stipulate as to any particular engineer." Witness Conger, one
of defendants, testified that he had been working for the city
works for five days previous to March 4th; that the company
gave him no directions about the manner in which the streets
should be rolled, "or as to the control of the engine. The
roller was left on the street at night, and was not taken back
to the company's house. Mr. Sherman, the foreman of Mr.
Miller, gave me directions regarding the manner in which the

28

streets were to be rolled, and I obeyed them. The superintendent of streets directed me to change from one side of the street to the other, and that I should stop rolling on the north side, and continue work on my south side. It was on this south side that I got into the hole in which the roller was stuck. Mr. Sherman was present all the time I was working. He had four or five men there, to my recollection, employed in spreading the rock on the street. I was appointed to my position by Mr. Gunn, superintendent of the California Improvement Company, and was paid by check of the California Improvement Company at the expiration of each month.'' This is all the evidence introduced upon this point. The learned trial judge seems, by the findings, to have based his conclusion that the relation of master and servant existed between the engineer, Conger, and the company, upon the facts found that the company selected the engineer, paid for his services, and had the right to remove him. There is no direct evidence that the company reserved the right to remove the engineer, but the fact may be assumed to be as found. It would probably follow from the fact that the company was to furnish the engineer. It is well settled, and respondent concedes the rule, that the question of liability does not depend upon the fact that the servant is in the general employ of a third person: Cotter v. Lindgren, 106 Cal. 602, 46 Am. St. Rep. 255, 39 Pac. 950, cited by both parties; Whart. Neg., sec. 173. Something more than the right of selection and removal on the part of the principal is essential to the relation. The right must be accompanied with the power of subsequent control in the execution of the work to be done: Boswell v. Laird, 8 Cal. 469, 68 Am. Dec. 345. Nor do we think it would follow from the fact that the company selected the engineer, and might remove him, and was to pay his wages, that the company had control over him for the particular employment in which he was engaged. ''The understanding was that the machine, with the fuel and engineer, should be supplied at so much per day.'' When these were supplied, the outfit passed under the control of the city to do its work, and was so engaged under the directions of the proper officer of the city when the accident occurred. ''As a matter of fact, this roller, while operating upon the street, was entirely under the direction of the superintendent,'' as he testified. The evidence was that the engineer was directed to

cross to the south side of the street, and roll the broken stone
that had been placed there. An unknown soft place in the
street disclosed itself, and the roller began to sink into a hole,
from which it became necessary to extricate it, and to do so
the engineer was compelled to increase the steam pressure in
order to supply the engine with sufficient power to lift itself
out of this depression. Some little time was consumed in
this effort, during which passing teams were halted to await
the result, and, among others, plaintiff's horse and cart in
which he was riding. Finally, by increasing the steam, the
engineer got his machine out of the hole on firm ground, and
backed it to the side of the street so that the teams could pass.
At this moment, and while the steam was on under high
pressure, plaintiff started to pass, and, at the same time, as
the court found, the steam escaped from the safety valve,
and so frightened plaintiff's horse that he turned suddenly
around, and threw plaintiff to the ground, thus injuring him.
The court found that it was necessary to generate all the
steam which the engine could safely carry, but that the engi-
neer was guilty of negligence in not warning plaintiff that
there was danger of the escape of steam through the safety
valve. It clearly appears, without conflict, that Conger went
where he was directed to go by the superintendent; that the
soft place in the street was not discovered until the roller
got onto it, and began to sink; that it was necessary to in-
crease the steam at once, or the roller would have continued
to sink, and be beyond the power of extricating itself; that
all the steam the engine would carry became necessary, and,
finally, after much effort, the machine lifted itself out. The
accident resulted from the necessity of increasing the steam
in the boiler, and this became necessary because the roller had
been directed to work where the ground was too soft to hold
it up. There is no pretense that the engineer was unskillful
in managing the engine in the effort to extricate it. The
roller and engineer had been working for the city for five
days previously without complaint as to the fitness of the
roller or skillfulness of the engineer, and the complaint now
made is not as to the facts just mentioned, but that the engi-
neer was at fault in not warning plaintiff that a high pressure
was on the boiler, and the safety valve was liable to let the
steam escape. It seems manifest to us that the accident re-
sulted while the engineer and the roller were under the direc-

tion and control of the city superintendent, and that for the time being the company had no control whatever in the matter, and for that particular work was not the engineer's master. Respondent suggests that there is no evidence tending to show that the engineer was released from the service of the company. The evidence on this point showed only that the engineer was paid for his services by the company, and this is entirely consistent with the right of the city authorities to direct where and how the work was to be done after it had taken him and the roller into its employ. A city had leased from a railroad company an engine and train of cars to carry gravel to its waterworks, and the company agreed to furnish a conductor, engineer, fireman and brakeman to manage the train, all of whom it paid, and also furnished necessary fuel for the engine. The conductor had general charge of running the train, but received his instructions as to the performance of his work from the city employees. The plaintiff was injured by the negligence of the engineer in running at an unlawful speed. It was held that the city was liable. The court said: "It is well settled that one who is the general servant of another may be lent or hired by his master to another for some special service, so as to become, as to that service, the servant of such third party. The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired": Coughlan v. City of Cambridge, 166 Mass. 268, 44 N. E. 218. An agreement was made by a railroad company with H. & Co., by which the latter were to construct a branch road, the railroad company "to furnish all motive power and cars, and operate the construction trains." H. & Co. had control over the laying of the track. It was sought to hold the railroad company for the negligent conduct of the engineer in running the train over the unfinished track at a dangerous rate of speed without keeping a lookout ahead. It appeared that H. & Co. had the right to direct where to place the train, to unload, stop or to start it; and it was held that the fact that the crew were retained on the railroad company's payrolls did not tend to show that the railroad company retained any control of the movements of the train. The railroad company was held not liable: Miller v. Railway Co., 76 Iowa,

655, 14 Am. St. Rep. 258, 39 N. W. 188.   Much to the same
effect are the following cases: Byrne v. Railroad Co., 61 Fed.
605, 9 C. C. A. 666, 24 L. R. A. 693; Powell v. Construction
Co., 88 Tenn. 692, 17 Am. St. Rep. 925, 13 S. W. 691.   Re-
spondent cites in reply: Coyle v. Pierrpont, 37 Hun (N.
Y.), 379; Huff v. Ford, 126 Mass. 24, 30 Am. Rep. 645; Ames
v. Jordan, 71 Me. 540, 36 Am. Rep. 352; Gerlach v. Edel-
meyer, 88 N. Y. 645, and Du Pratt v. Lick, 38 Cal. 691.
In the case reported in Hun a stevedore was employed by the
owners of a vessel to unload it at docks owned by defendants.
Defendants hired to the stevedore a portable engine, with an
engineer to run it, to furnish power to hoist the cargo from the
vessel and lower it on the wharf.   By the negligence of the en-
gineer an employee of the stevedore was injured.   It was held
that defendants, as masters, were responsible for the engineer's
negligence.   It does not appear from the report of the case
that the stevedore exercised any control over the engineer.   The
defendants agreed to furnish power; and we cannot discover
that any directions were given by the stevedore to the en-
gineer.   We do not think the case necessarily conflicts with
the principles upon which the present case must rest, and, if
it does, we cannot follow it.   Appellant cites, contra, Dono-
van v. Syndicate, [1893] 1 Q. B. 629, where in a similar case
the lessee gave directions as to the working of the crane used
in unloading the vessel.   The lord chief justice said: ''The
key to the whole case is that Jones & Co. were loading the
ship, and not the defendants.   The crane was being used for
Jones & Co.'s purposes, and not for those of the defendants,
and the former must, for that particular job, be considered
as Wang's masters.''   Huff v. Ford was the case of a horse,
wagon and the driver hired to the city, and the injury was
to plaintiff's window.   The driver struck the horse a violent
blow, causing it to kick a loose shoe through the window.
The case seemed to turn upon defendant's duty to see that
his horse was properly shod.   The case would be analogous if
the injury in the present case had resulted from defects in
the engine, which it is not claimed to have been the case.   We
do not find that any of the cases cited by plaintiff necessarily
conflict with the views we have expressed.   We are of the
opinion that the court erred in its finding and conclusion as
to defendant's liability, and for that reason the judgment

and order should be reversed. It is not necessary to notice the other points in the case.

We concur: Haynes, C.; Gray, C.

· PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed.