## PARKHURST ET AL. v. SWIFT.

[No. 4,301. Filed October 28, 1903.]

MASTER AND SERVANT.—*Injury to Lent Servant.—Independent Contractor. —Construction of Elevator.*—Defendants contracted to construct an elevator in a factory of a paper company for a certain sum, and sent their agent to construct same. The paper company agreed with the agent to furnish three men, including plaintiff, to assist in constructing the work, and to deduct the cost of their labor from the contract price. The agent assisted in the work, and in so doing removed a brace from a scaffold which rendered same dangerous, and liable to fall. He directed plaintiff to saw an opening in the second floor, and while he was so at work, directed another servant to go upon the top of the scaffold and oil machinery. The scaffold gave way and a portion thereof fell and struck plaintiff, injuring him. *Held,* that defendants were liable for the injuries sustained by plaintiff.

From the Superior Court of Madison County; *H. C. Ryan,* Judge.

Action by Benjamin F. Swift against John W. Parkhurst and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*W. A. Kittinger* and *W. S. Diven,* for appellants.
*Alfred Ellison* and *W. S. Ellis,* for appellee.

BLACK, J.—The appellee recovered judgment against the appellants in an action for damages for a personal injury. There were three paragraphs of complaint, but before trial the appellee dismissed as to the first paragraph. The Alexandria Paper Company was a defendant with the appellants, but the court sustained its motion, at the close of the evidence, to instruct the jury to return a verdict for that defendant. A demurrer of the appel-

lants for want of sufficient facts to each of the second and third paragraphs of the complaint was overruled.

So far as the second and third paragraphs differ one from the other, it appears from the record that the verdict was based on the third paragraph, rather than the second, and an examination of the third paragraph alone will be sufficient. It was, in substance, alleged therein that the paper company was a corporation, and that the appellants were partners doing business under the firm name of Parkhurst Bros. & Co., and were engaged in constructing elevators and in putting them in place and operation; that on and before December 14, 1899, the paper company was constructing a large factory building in the city of Alexandria, Madison county, Indiana, and at that date and immediately prior thereto the appellants, as partners, were constructing an elevator and putting it in place and operation in the factory building for the paper company; that the contract and arrangement between the paper company and the appellants by which the latter were building the elevator was to the appellee unknown; that he was a carpenter by trade, and for many weeks prior to the date mentioned he was in the employ and under the direction and control of the paper company, and working in and upon the factory building, except as hereinafter stated; that about four days prior to December 14, 1899, the paper company ordered and directed the appellee to go to work for the appellants, and in all things to obey the orders and directions of the appellants, and to work for and assist them in putting in the elevator in the factory building, which directions and arrangements were agreed to and fully acquiesced in by the appellants; that, pursuant to these orders and directions, he did, about four days prior to the date mentioned, go to work for the appellants in and upon the construction of the elevator and putting it in place in the building, and he so continued to work for the appellants until the injury complained of

herein; that in constructing the elevator the defendants
entrusted the work and the supervision thereof wholly and
exclusively to the agent and superintendent of the appel-
lants; that his name was unknown to the appellee; that
this agent and superintendent of the appellants had the
exclusive supervision and control of the conditions sur-
rounding the work, and the sole and exclusive manage-
ment, control, and supervision of all the work of construct-
ing the elevator and putting it in place and running order,
and had at all times full authority to employ or discharge
such hands as he deemed necessary to the proper prose-
cution of the work, and had at all times full and complete
authority to direct when and where and how and with
what tools and appliances each and every hand engaged
in and upon the work of constructing the elevator and put-
ting it in place and running order should work, and in
all the work and supervision and control thereof this su-
perintendent acted in all things for and instead of the
defendants; that on the day above, mentioned, and for four
days prior thereto, the appellee was and had been contin-
uously working upon the construction of the elevator and
putting it in place and running order in the factory build-
ing, and was under the exclusive control and direction of
this agent and superintendent; that about three days be-
fore December 14, 1899, the appellants had cut a large hole
about six by seven feet in both the second and third floors
of the factory building, for the purpose of allowing the
elevator to pass through these floors in its ascent and de-
scent when in operation, and at the same time the appel-
lants constructed a large wooden scaffold about eight feet
above the third floor, which scaffold was constructed by
standing four small scantlings of timber on end on that
floor, one of which was placed on the floor just outside of
each of the corners of this large hole or opening on the
third floor; that the appellant nailed cross-timbers to these
upright scantlings about eight feet above the third floor,

and laid on these cross-timbers heavy wooden boards for a flooring for the scaffold; that the appellants then braced and stayed the scaffold by nailing slats of timber from the base of each upright timber to the top of the next upright timber, and then crossing such braces with other braces at right angles and nailing the same to the upright timbers at top and bottom; that the scaffold so completed was directly over the hole above mentioned in the third and second floors—all of which facts were at all times known to the paper company; that on December 14, 1899, while the appellee, pursuant to the orders and directions of the paper company, was working for the appellants, and while he was under the exclusive and absolute control and directions of the agent and superintendent above mentioned of the appellants and the paper company, this superintendent ordered and directed the appellee to take a handsaw and saw an opening, or make a small hole, in the second floor of the factory building at the edge of the large hole in the floor, the small hole being for the purpose of an opening through which a cable rope for raising and lowering the elevator was to pass; that the appellee at once went to work sawing out the small hole, and while he was so at work the superintendent, while in the line of his duty as such, negligently and carelessly knocked loose and took away said braces of the scaffold, well knowing that the appellee was working under the same, and that it was rendered liable, by that act of removing the braces, to fall, and the timbers thereof to strike and injure the appellee; that the superintendent, when this was done, well knew that it would render the place where the appellee was at work a very hazardous and dangerous one; that about two hours after this removal of the braces, and while the appellee was still at work sawing out the hole in the second floor, the superintendent, while in the line of his duties as such, carelessly and negligently ordered one of the employes of the appellant to go upon the third floor

of the factory building and climb on the scaffold to do some work thereon wholly disconnected with the work the appellee was doing; that the superintendent, at the time he so ordered the said employe so to go upon the platform, well knew that his act in so ordering the employe, and the act of the employe in obeying the order, would render the place where the appellee was working a very dangerous and hazardous one, and that the same was liable to throw the platform, or a part thereof, down on the appellee, and greatly injure him, and the superintendent then well knew that his act in removing the braces and his thereafter ordering the employe to go upon the scaffold made it liable to be thrown down and to fall upon and injure the appellee; that in obedience to said command of the superintendent the employe attempted to go upon the platform, when, by reason of the braces being removed from the timbers thereof and the attempt of the employe to climb upon the platform, the scaffold and the timbers thereof separated and fell apart, allowing and causing one of the heavy boards on the scaffold to fall through the hole in the third floor in such a way that it struck the appellee upon the back and side and greatly and permanently injured him. His injuries and expenses were here stated in detail. It was alleged that the appellee at no time had any knowledge or notice, before he was injured, that the braces had been removed from the frame of the platform, or that anyone was ordered to go upon the platform, or was attempting or about to go upon it; that the injury was brought about wholly and solely by reason of the negligence of the agent and superintendent and the negligence of the paper company in not providing and maintaining a safe place for him to work in, and the negligence of the superintendent in removing the braces from the scaffold and ordering said employe to go and causing him to attempt to go upon the scaffold as aforesaid, and thereby making the place where the appellee was at work an unsafe,

dangerous, and hazardous one in which to work; that by his said injuries so received he was damaged in the sum of, etc., for which he demanded judgment against each and all of the defendants.

With the general verdict in favor of the appellee the jury returned answers to interrogatories, and the court overruled a motion of the appellants for a judgment in their favor thereon notwithstanding the general verdict.    It was thus specially found that the appellee had been working as employe doing general carpenter work for the paper company prior to December 10, 1899; that the paper company contracted with the appellants to furnish and put in an elevator in the factory building for the sum of $325; that a man named Gentry came to Alexandria, where the factory was, to put the elevator in the factory, and the paper company supplied three men from its employes to assist in the putting in of the elevator, in the putting in of which the appellee was injured.    These three men were Benjamin F. Swift, the appellee, and one Weaver and one White, all three being regular employes of the paper company.    The paper company settled with these three men for their wages, the same as it had been doing regularly, for the time they worked in putting up the elevator.    The paper company afterward settled with the appellants, and paid them the first contract price, less the amount of wages of the three men; and this was all the paper company paid to the appellants.

Interrogatory ten and the answer thereto were as follows: "Did Parkhurst Bros. & Co. directly employ the plaintiff and Weaver and White to assist in putting up the elevator where the plaintiff was injured? A.  Yes, by their agent."  It is found that the three men assisted in putting up the elevator by direction of the superintendent or agent of the paper company for them to assist Gentry in putting it up.   There was no employment of the three men to assist in putting up the elevator other than the general em-

ployment by the paper company for which they had been working for some months, and they were directed by the agent or superintendent of the company to assist in putting up the elevator.    Interrogatory fourteen:    "If the plaintiff did any work in putting up the elevator, in the work of which he was injured, under any other employment than his employment by the Alexandria Paper Company, you may state when he was so employed and by whom.    A. The morning the elevator man came, by Parkhurst Bros. & Co.'s agent."    The paper company, after it had made its contract with the appellants, agreed with them that it would furnish a part of the labor of putting in the elevator, and that the amount of the labor so furnished should be deducted from the contract price, and that it would pay them $325, less the value of labor furnished; and the paper company paid to the appellants that sum, less the value of such services.    All this was at Gentry's request. The jury found that there was evidence that Gentry bore to the appellants the relation of agent.    He came, not to assist in the putting up of the elevator, but to put it up. He had authority given him by the appellants to employ or discharge others in the work of putting in the elevator. He did not make any contract with the appellee or Weaver or White for them to work in putting in the elevator.    The members of the firm of Parkhurst Bros. & Co., at the time when that firm was putting in the elevator and when the appellee was hurt, were the appellants.    They constituted a partnership.    The duty of Gentry, under and by virtue of his employment by the appellants, was to install the elevator.    His authority to hire or discharge men for the appellants was as their agent.    Gentry and the appellee and Weaver and White were the only persons that worked on the job.    They all worked at manual labor, and assisted each other in the entire work until the appellee was injured.    On the day on which the appellee was injured, the persons, or a portion of them, engaged in the work, built

a scaffold eight feet high on the third floor of the building over the hatchway which had been cut out for an elevator. The parties engaged in putting in the elevator had been working in and about the scaffold until about noon of the day of appellee's injury. Appellee was a carpenter of ten or eleven years' experience. The second floor had been laid around and near the hatchway. The appellee was engaged in the afternoon in sawing a small hole through the floor in the second story, for the rope of the elevator, immediately east of the hatchway, and connected therewith. A board was laid from north to south across the hatchway close to its east side. The appellee was standing or kneeling on the board and sawing out the small hole. One of the braces had been taken from one side of the scaffold on the third floor just before noon of the day on which he was injured. Weaver was present and saw the brace taken away, and knew it was taken away. While appellee was engaged in sawing the small hole, Gentry, Weaver, and White were engaged in the basement in some duties about the elevator work, and while they were there Weaver took some grease, and went to the third floor to grease some pulleys which had been put up over the scaffold there. When he got to the third floor he did not know that, if he undertook to climb upon the scaffold from which the brace had been removed, or upon the southeast part thereof, the scaffold would thereby be pulled apart, and be liable to let a board on the scaffold fall down. He attempted to climb up the southeast corner of the scaffold, and in doing so he pulled the scaffold apart, and let a board fall, which struck and injured the appellee. He could not have climbed in safety upon the scaffold at another place. He climbed up the scaffold without thinking or paying any attention to the fact that the brace had been removed. He did not know, before he undertook to climb up, that, if he did so, he would pull the scaffold apart, and did not undertake to climb up carelessly and negligently, and without thinking

what he was doing. There were not at that time about the scaffold or on the third floor any other persons who were or had been engaged in the work of putting in the elevator, or concerned in that work, when Weaver undertook to climb upon the scaffold.

The appellee was not injured by Weaver's unthoughtedly undertaking to climb upon the scaffold when he knew that to do so would pull it apart and let the board fall. The scaffold was immediately over the opening or hatchway on the third floor through which the elevator was to pass, and the opening or hatchway through which the elevator was to pass in the second floor was immediately under that in the third floor, and under the scaffold. The appellee knew that the scaffold on the third floor was built over the hatchway or opening in that floor. If he had been standing on the floor of the second story where he was at work, when he was injured, sawing the opening in that floor, the board which fell would have struck him. He was standing or kneeling on a plank, across the hatchway, bending over and sawing with one foot on the board and one on the floor. To an interrogatory asking if there was anything in the way of his standing on the floor and sawing a hole in the floor, at which work he was engaged when injured, the jury answered in the affirmative. It would not have been a safer place for him to have sawed the hole to stand or kneel on the floor than to stand or kneel on the plank. He could have performed the work he was engaged in doing by standing or kneeling on the floor immediately east of the hole he was sawing in the floor, but at a disadvantage; and he could not thus have done the work as well as by standing or kneeling upon the board across the hatchway and immediately west of the hole he was sawing, on account of the elevator guide. The injury was not caused by the unthoughtful act of Weaver doing what he knew would cause the scaffold to separate and cause the

board to fall. There was nobody near or about Weaver to see him when he attempted to climb up the scaffold. It was answered that Weaver would not have climbed up the scaffold at a place where it would have been safe, and would not have pulled the scaffold apart, if he had thought about the danger which he knew existed. When he attempted to climb up the scaffold, he immediately realized that he had pulled it apart, and at once called out in a loud voice to watch out below, and the board continued to fall from the scaffold and struck the appellee. The appellee had been assisting in the work on the elevator in the afternoon on which he was injured along with other men working on the elevator on the scaffold on the third floor. He went with Gentry from that floor to the second floor a short time before he was injured, and when he started down he left Weaver and White on the third floor, and the appellee at once commenced sawing out the hole, in the work at which he was injured. He knew that Weaver and White were assisting, along with himself and Gentry, in putting in the elevator.

The general subject of the duty of the master to provide for the servant a safe place and safe appliances for his work need not be discussed. The case proceeded upon the theory of the liability of the appellants for failure properly to discharge such duty. The most important discussion of counsel has reference to the relation of the parties concerned. The work undertaken by the appellants was in their special line of business, and the providing of the elevator and placing it in the building in running order constituted one entire undertaking for a single definite price, the materials and labor to be provided by the appellants, the paper company providing only the building in which it was placed, and the appellants being responsible to the paper company for the result alone, and not being under its control and direction in the doing of the work. It seems sufficiently clear that the appellants were inde-

pendent contractors. The appellee and Weaver and White had been continuously the servants of the paper company. That company had not contracted to provide any of the necessary labor or assistance, but at the request of the agent of appellants it furnished the three workmen, for whose services the appellants paid indirectly by allowing a deduction of the amount of their compensation from the contract price, the wages of the workmen being directly delivered to them by the paper company. While these men were thus employed they were not under the control and direction of the paper company as to their work, but they were for the time and in that work the servants of the appellants, and were under the entire control and management of the agent Gentry, who alone represented the appellants on the ground and in the work, with full control as to the manner of performance and authority to employ the needed assistance and to discharge workmen so engaged by him. The fact that Gentry himself performed manual labor along with the men so provided by the paper company did not render him any the less the superintendent and sole representative of the appellants in the work of putting in the elevator. It was more convenient and to the advantage of the appellants that he should thus engage in the work, whose needs he understood. It was as if an independent contractor had himself taken manual part with his workmen. Gentry was a vice-principal, and the appellee, while a servant of the appellants for the occasion, was not his fellow servant in the doing of the work in which he was injured. The duty of the appellants to provide and maintain a safe place for the appellee in the doing of the work of his employment was devolved upon Gentry; and the appellants were responsible for the manner in which he performed that obligation. The act of Weaver in attempting to climb upon the scaffold caused it to spread, and the board to fall and injure the appellee; but that act was one for which the scaffolding should have been sufficient. It was rendered insufficient,

not in its original construction, but by the removal of the brace. Weaver did an act which was not improper to be done, and which might have been done safely if the appliance which he was required to use had been a proper one. The proximate cause of the injury was the unsafe condition of the scaffold, rendered so by Gentry, through whom the appellants had the right to accept or reject the services of the appellee, and control and direct him; the will of Gentry, and therefore of the appellants, being represented in the result and in the details of the work performed by the appellee.

*Higgins* v. *Western Union Tel. Co.,* 156 N. Y. 75, was an action for a personal injury sustained by the plaintiff while engaged in using an elevator in the defendant's building. A contractor for restoring the building, which had been injured by fire, was to furnish elevators, and they had been placed in the building. The contractor had not completed his contract, and had not turned over the elevators to the owner of the building, but they were still subject to the contractor's use in carrying material and workmen. The plaintiff, a plasterer, in the employ of the contractor, was directed by him to plaster the elevator shaft, for which purpose the elevator was used as a platform. It was necessary to move the elevator up and down, and the contractor, instead of using one of his own men for that purpose, found it more convenient and economical to procure a man who was a general servant of the defendant, and in his employment for the purpose of running the elevator for passengers—a use permitted during some portions of the day. The plaintiff's injury was caused by the negligent act of this conductor of the elevator. It was held that the conductor was engaged, not in the work of the owner of the building, but in that of the contractor, and the former was not responsible for the injury. The court said that the true test in such cases is to ascertain who directed the movement of the person committing the injury,

and quoted from *Rourke* v. *White Moss Colliery Co.*, L. R. 2 C. P. D. 205, as follows: "But when one person lends a servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him." See, also, *Cotter* v. *Lindgren*, 106 Cal. 602, 46 Am. St. 255; *Brown* v. *Smith*, 86 Ga. 274, 12 S. E. 411, 22 Am. St. 456; *Powell* v. *Construction Co.*, 88 Tenn. 692, 13 S. W. 691, 17 Am. St. 925; *Pioneer, etc., Construction Co.* v. *Hansen*, 176 Ill. 100, 52 N. E. 17; *Miller* v. *Minnesota, etc. R. Co.*, 76 Iowa 655, 39 N. W. 188, 14 Am. St. 258; *Scarborough* v. *Alabama, etc., R. Co.*, 94 Ala. 497, 10 South. 316.

The uncertainty of the complaint as to the relation between the paper company and the appellants because of the appellee's alleged want of knowledge of the contract between them, and the allegation to the effect that Gentry represented all the defendants, can not work a reversal of the judgment because of the overruling of the demurrer. It is sufficiently shown that he was not a fellow servant with the appellee.

It turned out, as shown by the findings of the jury, that Gentry was the superintendent of the work, representing therein the appellants as independent contractors; and the source of the payment of the wages of the appellee could not alone determine the question as to who was his master for the time being.

Under the statute of 1899 (359a Burns 1901) it was not necessary for the appellee to plead want of contributory negligence.

There is nothing in the special findings of the jury irreconcilably in conflict with the general verdict. The evidence might have supplied facts necessary to support the general verdict, whose existence is not affirmed or denied by the special findings. Thus, it appears in the evidence

that the brace was knocked off the scaffold by the direction of Gentry in the course of the work on the elevator, and was not thereafter restored; that Weaver went alone from the basement to the third story to grease some pulleys above the scaffold by direction of Gentry; and that appellee had no notice of the removal of the brace, and no notice that Weaver or any other person was in the third story, until he heard him call, "Look out."

The sufficiency of the evidence is questioned, but we are unable to disturb the conclusion of the jury thereon.

Some questions are also made concerning the admission of evidence and relating to instructions to the jury, but they do not seem of sufficient importance to warrant the lengthening of this opinion by discussion thereof.

We do not find any reversible error in the record. Judgment affirmed.